**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

THE UNITED STATES OF AMERICA, *ex rel.*
PAUL SOVITSKY,

      Plaintiff,

v.

SOC LLC,

      Defendant.

**CASE NO. GLR-19-2281**

<u>**MEMORANDUM IN SUPPORT OF SOC LLC'S MOTION
FOR RECONSIDERATION AND CLARIFICATION**</u>

## **TABLE OF CONTENTS**

I.    BACKGROUND ............................................................................................... 2

II.   LEGAL STANDARDS ................................................................................... 4

      A.    Motions for Reconsideration................................................................. 4

      B.    Motions for Clarification ..................................................................... 5

III.  ARGUMENT .................................................................................................. 6

      A.    The Court Should Reconsider the Conclusion that Causation Was
            Uncontested and Address Presentment................................................ 6

      B.    If Counts One and Two Survive, The Court Should Clarify Their Scope ........... 10

            1.    Relator's allegations under WPS II, other than those related to
                  firearms and physical fitness, do not state a plausible claim. .................. 11

            2.    Relator's WPS I allegations do not state a plausible claim. ..................... 13

            3.    Counts One and Two should be limited to physical fitness and
                  weapons qualification theories under WPS II........................................... 14

CONCLUSION............................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*U.S. ex rel. Ahumada v. NISH*,
   756 F.3d 268 (4th Cir. 2014) ............................................................7, 8

*Allison Engine Co. v. U.S. ex rel. Sanders*,
   553 U.S. 662 (2008).............................................................................7

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ...............................................................4

*U.S. ex rel. Badr v. Triple Canopy, Inc.*,
   775 F.3d 628 (4th Cir. 2015) ................................................12, 14, 15

*Carrera v. E.M.D. Sales, Inc.*,
   Civ. No. 17-3066, 2021 WL 6077120 (D. Md. Dec. 23, 2021).................5

*Cohens v. Md. Dep't of Hum. Res.*,
   933 F. Supp. 2d 735 (D. Md. 2013) ....................................................5, 6

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   Civ. No. 08-2764, 2011 WL 3240456 (D. Md. July 27, 2011).................5

*Faulkenberry v. Austin*,
   Civ. No. 22-01150, 2024 WL 4838827 (D. Md. Nov. 20, 2024) .............5

*FTC v. Ragingbull.Com, LLC*,
   Civ. No. 20-3538, 2021 WL 1240876 (D. Md. Jan. 25, 2021)................5

*U.S. ex rel. Grant v. United Airlines Inc.*,
   912 F.3d 190 (4th Cir. 2018) ...............................................................7

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ...........................................................7, 15

*U.S. ex rel. Kyer v. Thomas Health Sys., Inc.*,
   Civ. Action No. 2:20-cv-00732, 2024 WL 4707811 (S.D.W. Va. Nov. 7,
   2024) ....................................................................................................6, 8

*Lynn v. Monarch Recovery Mgmt., Inc.*,
   953 F. Supp. 2d 612 (D. Md. 2013)......................................................4

*Martin v. Highland Indus., Inc.*,
   Civ. No. 18-01343, 2021 WL 10282421 (D.S.C. May 4, 2021)..............5

*Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*,
   921 F. Supp. 2d 470 (D. Md. 2013) ................................................................4

*U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013) ...................................................6, 7, 12, 14

*U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*,
   42 F.4th 185 (4th Cir. 2022) ..................................................11, 12, 14

*U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   836 F.3d 770 (7th Cir. 2016) ..............................................................12, 14

*Ross v. Ricciuti*,
   Civ. No. 11-0181, 2016 WL 4240065 (D. Md. Aug. 11, 2016) ............................4

*Saint Annes Dev. Co. v. Trabich*,
   443 F. App'x 829 (4th Cir. 2011) ...................................................................4

*U.S. ex rel. Taylor v. Boyko*,
   39 F.4th 177 (4th Cir. 2022) ....................................................................7, 8

*United States v. Molina Healthcare of Ill., Inc.*,
   17 F.4th 732 (7th Cir. 2021) .........................................................................7

*United States v. Philip Morris USA Inc.*,
   793 F. Supp. 2d 164 (D.D.C. 2011) ................................................................5

*United States v. Triple Canopy, Inc.*,
   857 F.3d 174 (4th Cir. 2017) .........................................................................9

## Other Authorities

Federal Rules of Civil Procedure 54(b) ..............................................................4

Defendant SOC LLC ("SOC") respectfully seeks reconsideration and clarification of two aspects of the Court's April 8, 2025 Memorandum Opinion, ECF No. 50 (the "Order"), granting in part and denying in part SOC's Motion to Dismiss Relator Paul Sovitsky's Complaint, ECF No. 46 ("MTD").

*First*, SOC seeks reconsideration of the Court's finding that neither party contested whether alleged false claims caused the government to pay out money. SOC's lead argument in support of dismissal was that the Complaint failed to allege that any false claim was actually presented to the Department of State ("DoS")—*i.e.*, that any alleged contract violation resulted in the "presentment" and payment of a false or fraudulent claim. *See* MTD at 1, 8–13; SOC Reply Br., ECF No. 48 ("Reply"), at 1–6. The Fourth Circuit has been clear that "presentment" and "causation" are the same element, and that this element is required to adequately plead a False Claims Act ("FCA") claim. Indeed, SOC explained that the Complaint's failure to plead presentment (*i.e.*, causation) is what most acutely distinguishes this case from the Fourth Circuit's decision in *Triple Canopy*. Reply at 2–3. Because the Court's Order did not address SOC's argument on presentment, finding instead that no party contested causation, SOC seeks reconsideration of that central and potentially dispositive element of the Court's denial of its Motion to Dismiss.

*Second*, if Counts One and Two survive that inquiry, SOC seeks clarification as to which theories of fraud the Court found adequately alleged. Across 60 pages and 368 paragraphs, the Complaint makes reference to five categories of supposed contract violations and fraud that could be incorporated into Counts One and Two: (1) inadequate English proficiency (WPS I and II[1]),

---

[1]    "WPS I" and "WPS II" refer to the first and second contracts at issue under DoS's Worldwide Protective Services Program ("WPS"). *See* Order at 2.

1

(2) inadequate guarding experience (WPS I), (3) inadequate firearms experience (WPS I) / inadequate firearms qualifications (WPS II), (4) inadequate training (WPS I and II), and (5) falsified personnel bios (WPS I and II).[2]  *See* Compl., ECF No. 1, at 1, Table of Contents. Because these theories involve different time periods, different personnel, and different governing contracts, a delineation of which allegations survive will meaningfully impact the scope of this litigation.  In declining to dismiss Counts One and Two, the Court's Order suggested, but did not state definitively, that only the Complaint's "Physical Fitness Testing Fraud" and "Firearms Qualification Fraud" allegations under the WPS II agreement survived.  *See* Order at 3–4, 11–12, 15–16.  SOC thus seeks clarification as to whether only those theories may proceed while the other theories are dismissed.

I.  **BACKGROUND**

On August 7, 2019, Relator Paul Sovitsky filed this *qui tam* action on behalf of the United States against SOC.  *See* Compl.  His Complaint raised four counts under the federal FCA: (1) Count One alleges that SOC presented false or fraudulent claims for payment to DoS; (2) Count Two alleges that SOC submitted false records or statements that were material to false or fraudulent claims for payment presented to DoS; (3) Count Three alleges that SOC fraudulently avoided an obligation to pay penalties to DoS; and (4) Count Four alleges that SOC retaliated against Relator for engaging in conduct protected by the FCA.  On June 6, 2023, the Government declined to intervene in this action.  On April 19, 2024, SOC moved to dismiss each count for failure to state a claim.

---

[2]    The Court dismissed a sixth theory of fraud—that SOC avoided deductions under WPS I and II—when it dismissed Count Three, alleging reverse false claims.  *See* Order at 17 n.6.

SOC moved to dismiss Counts One and Two on the grounds that Relator had failed to adequately allege presentment, materiality, falsity, scienter, and to identify any false record or statement made in support of any fraudulent claim.  *See* MTD at 9–13, Reply at 1–7 (presentment); MTD at 13–17, Reply at 7–9 (materiality); MTD at 17–21, Reply at 7 (falsity); MTD at 21–22, Reply at 9–11 (scienter); MTD at 22–23, Reply at 6 (false record or statement).  SOC also moved to dismiss Count Three, which Relator conceded in opposition briefing, and Count Four, which is not at issue in this Motion.  The remainder of this Motion thus addresses only Counts One and Two of the Complaint.

On April 8, 2025, the Court granted in part and denied in part SOC's Motion to Dismiss. In reciting the standard for FCA liability, the Order stated that "[t]o prevail on a claim under these sections of the FCA, Sovitsky must allege four elements: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money."  Order at 10.[3]  The Order continued, "Neither party contests the fourth element so the Court will only address whether the first three elements are plausibly alleged."  *Id.*  Consequently, the Court issued findings as to falsity, scienter, and materiality alone.  *See id.* at 10–13 (falsity), 13–14 (scienter), 14–16 (materiality).  Finding those elements adequately alleged, the Court concluded that "Sovitsky has stated a plausible claim under Sections 3729(a)(1)(A) and (B) of the FCA," such that "Count I and II will proceed."  *Id.* at 17.

---

[3]    Unless otherwise noted, all emphasis in this Brief has been added, and all internal quotations, alterations, and omissions have been omitted.

3

## II.    LEGAL STANDARDS

### A.    Motions for Reconsideration

"A motion to reconsider an interlocutory order is governed by Federal Rule of Civil Procedure 54(b)." *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc*., 921 F. Supp. 2d 470, 480 (D. Md. 2013). That Rule provides that, unless certified as final, "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b).

The Fourth Circuit has made clear that motions to reconsider interlocutory rulings are "committed to the discretion of the district court" and thus "are <u>not subject to the strict standards</u> applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *see also Saint Annes Dev. Co. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) ("The power to reconsider or modify interlocutory rulings is committed to the discretion of the district court, and that discretion is <u>not cabined by the heightened standards</u> for reconsideration governing final orders.").

Thus, while a court may look to the Rule 59(e) factors for guidance when reviewing a motion to reconsider an interlocutory order,[4] "the goal is to reach the correct judgment under law," *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 619 (D. Md. 2013); *see also Trabich*, 443 F. App'x at 831–32 (reversing denial of motion for reconsideration; "[Defendants] argue that . . . the district court erred by considering their motion for reconsideration under the standard governing motions filed under Rule 59(e) of the Federal Rules of Civil Procedure. We agree.").

---

[4]    A motion to reconsider a final judgment under Rule 59(e) must meet the stricter standard of demonstrating that "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Ross v. Ricciuti*, Civ. No. 11-0181, 2016 WL 4240065, at *3 (D. Md. Aug. 11, 2016).

Consequently, "[i]n considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has obviously <u>misapprehended a party's position</u> or the facts <u>or applicable law</u>."  *Cohens v. Md. Dep't of Hum. Res.*, 933 F. Supp. 2d 735, 742–43 (D. Md. 2013); *see also Martin v. Highland Indus., Inc.*, Civ. No. 18-01343, 2021 WL 10282421, at *5 (D.S.C. May 4, 2021) ("A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.").

### B.    Motions for Clarification

"An ambiguous order may be resolved through a motion for clarification."  *Faulkenberry v. Austin*, Civ. No. 22-01150, 2024 WL 4838827, at *2 (D. Md. Nov. 20, 2024) ("The language of the Court's Order partially dismissing Count III is not ambiguous on its face.  However, when viewed in conjunction with the Court's analysis and prior Memorandum Opinion, ambiguity is present.").

"[T]here is no Federal Rule of Civil Procedure specifically governing motions for clarification."  *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). Accordingly, motions for clarification are sometimes considered under the standard for reconsideration, *see, e.g.*, *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, Civ. No. 08-2764, 2011 WL 3240456, at *5 (D. Md. July 27, 2011) (addressing motion for reconsideration and clarification together), but are often resolved without reference to any specific framework under the Federal Rules, *see, e.g.*, *FTC v. Ragingbull.Com, LLC*, Civ. No. 20-3538, 2021 WL 1240876, at *2 (D. Md. Jan. 25, 2021); *Carrera v. E.M.D. Sales, Inc.*, Civ. No. 17-3066, 2021 WL 6077120, at *2 (D. Md. Dec. 23, 2021).

**III.    ARGUMENT**

### A.    The Court Should Reconsider the Conclusion that Causation Was Uncontested and Address Presentment

SOC respectfully submits that the Court's Order may have misapprehended SOC's lead argument in support of dismissing Relator's substantive FCA claims. In so doing, and omitting presentment from its analysis of the Complaint's claims, the Court also committed an error of law. SOC's chief argument for dismissal was that the Complaint fails to identify an actual claim submitted to the Government for payment, as the Fourth Circuit requires. Fourth Circuit law explains that this is causation—*i.e.*, it is only the presentment of a specific claim for payment that transforms an alleged fraudulent scheme into one that plausibly causes the Government to pay. *See U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). Pursuant to Rule 9(b), presentment may not be assumed and is an indispensable element of a plausible FCA claim. *Id.* Because the Court's Order may have misinterpreted SOC's Motion to Dismiss as conceding causation, and consequently did not address this fundamental element, SOC requests reconsideration of this point. *See Cohens*, 933 F. Supp. 2d at 742–43, n.21 (noting reconsideration may be required "to correct a clear error of law" or where the court has "misapprehended a party's position . . . or applicable law").

"Classic causation and the presentment requirement go hand-in-hand." *U.S. ex rel. Kyer v. Thomas Health Sys., Inc.*, Civ. Action No. 2:20-cv-00732, 2024 WL 4707811, at *5 (S.D.W. Va. Nov. 7, 2024). As the Fourth Circuit has explained, "the critical question [in an FCA case] is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." *Nathan*, 707 F.3d at 456; MTD at 13. "Therefore, when a relator fails to plead plausible allegations of presentment, the relator has not alleged all the

elements of a claim under the Act." *Nathan*, 707 F.3d at 456; MTD at 10. In other words, it is only the presentment of a claim for payment that causes the government to "pay out money or to forfeit money due." *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) ("The FCA protects the government against false claims that are <u>presented</u> to it in federal contracts. All FCA claims require, among other elements, that the false statement or conduct <u>caused</u> the government to pay out money or to forfeit money due."); MTD at 7; *see also United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 745 (7th Cir. 2021) ("Causation here is evident. <u>By submitting enrollment forms</u> requesting payment for services Molina could not provide to Illinois Medicaid, <u>Molina caused the government to pay</u> . . . .").

For that reason, causation and the requirement that a complaint identify an actual claim submitted to the Government for payment are cited interchangeably as the fourth element of an FCA claim. *See, e.g.*, *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 & n.8 (4th Cir. 2014) (describing the elements of an FCA claim as requiring that "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) <u>that involved a claim made to the government for payment</u>" and explaining the Fourth Circuit had "previously framed the fourth element as requiring proof that the false statement <u>caused</u> the government to pay out money"); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) ("The test for False Claims Act liability distilled from the statute and the sources discussed above is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that <u>caused</u> the government to pay out money or to forfeit moneys due (*i.e.*, <u>that involved a claim</u>).").[5]

---

[5]    The variation in descriptions may stem from *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 n.12 (2008), in which the Supreme Court held that "a presentment or causation requirement is not an element of a false statement or record claim." *U.S. ex rel. Taylor v. Boyko*,

In its Motion to Dismiss, SOC vigorously contested that the Complaint adequately alleged causation by demonstrating that the Complaint failed to identify any "false claim or statement that <u>caused</u> the government to pay SOC."  MTD at 8 ("[W]here is the false claim or statement that <u>caused</u> the government to pay SOC?  In a sea of alleged contract violations, the Complaint does not identify a single claim for payment . . . ."); *see also id.* at 13 (quoting *Nathan*: "[T]he critical question is whether the defendant <u>caused</u> a false claim <u>to be presented</u> to the government, because liability under the [FCA] attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme."); *id.* at 1 ("[M]ore fundamentally, the Complaint does not state an FCA claim because it does not identify even one claim for payment connected to alleged fraud."); *id.* at 10 (quoting *Taylor*: "Taylor counters that it is impossible to believe that other fraudulent billings were not made and submitted to the Government in the upcoding scheme.  But inherently speculative assertions like this one are insufficient under Rule 9(b)."); *id.* at 11 ("Relator has not described any specific claim with particularity." (collecting authorities)); Reply at 6 (citing *Nicholson*: "In other words, the entirety of the allegations needed to convert Relator's case from an ordinary breach-of-contract dispute into an FCA claim is a guess, on information and belief, that fraudulent omissions likely were made.  That is not enough.").

SOC explained that, under Rule 9(b), presentment of an actual claim may not be <u>inferred</u> by the mere fact of a Government contract.  *See* MTD at 9–13 and Reply at 3–6 (collecting cases); *see also Kyer*, 2024 WL 4707811, at *6 (applying *Nathan* and *Grant*: "Some may describe this approach as unreasonably harsh, but harshness must be balanced by the fraud pleading standard.").

---

39 F.4th 177, 195 n.12 (4th Cir. 2022); *see also Ahumada*, 756 F.3d at 280 n.8 (attributing the adjustment in language to *Allison Engine*).  "However, Congress specifically abrogated *Allison Engine* in 2009 when it amended the relevant section of the False Claims Act."  *Taylor*, 39 F.4th at 195 n.12; *see also* MTD at 10 n.4.

And SOC further explained that the Complaint's failure to plead presentment definitively severs this case from the lone claim in *Triple Canopy* found to satisfy Rule 9(b). *See* Reply at 2. Specifically, SOC explained that in *Triple Canopy*, the Fourth Circuit overwhelmingly "agreed that a relator does not state a claim by 'doing nothing more than simply presuming that' false claims were actually made," as the Complaint does here. *Id.* at 3. Consequently, the Fourth Circuit affirmed dismissal of each of the *Triple Canopy* relator's claims but a single count that identified specific invoices submitted to the Government for specified amounts. *Id.* (citing *U.S. ex rel. Badr v. Triple Canopy, Inc.*, 775 F.3d 628, 632–33, 640 (4th Cir. 2015), *cert. granted, judgment vacated*, 579 U.S. 924 (2016), *and opinion reinstated in part*, 857 F.3d 174 (4th Cir. 2017)); *see also Triple Canopy II*, 857 F.3d at 179 (reinstating the portion of *Triple Canopy I* that affirmed dismissal of Counts II-V of Badr's complaint). Because no allegation in this case provides that critical information demonstrating presentment, SOC explained that *Triple Canopy* compels dismissal of this Complaint.[6] *Id.*

In short, presentment is causation. SOC clearly demonstrated the reasons why presentment (*i.e.*, causation) was inadequately pled here. And the failure to plead presentment with particularity requires dismissal of an FCA claim. Because the Court may have misapprehended SOC's argument, and thus overlooked a necessary element of Relator's claims (ruling only on falsity,

---

[6]     The other fundamental distinction between this case and *Triple Canopy* is the lack of indicia of materiality in this case. The Fourth Circuit did find materiality established in *Triple Canopy* as the Court's Order notes. But that holding rested on specific Government interventions: namely, "the Government did not renew its contract for base security with Triple Canopy and immediately intervened in the litigation. Both of these actions are evidence that Triple Canopy's falsehood affected the Government's decision to pay." *Triple Canopy*, 857 F.3d at 179. As SOC explained in its Motion to Dismiss, exactly the opposite happened here: after years of alleged whistleblowing by Relator, culminating in his 2019 Complaint, the Government extended the WPS II contract in 2020 and expressly declined to intervene. *See* MTD at 16–17.

materiality, and scienter), its conclusion that Counts One and Two stated a claim should be reconsidered in light of controlling Fourth Circuit precedents.

### B.     If Counts One and Two Survive, The Court Should Clarify Their Scope

If Counts One and Two survive the above inquiry, and they should not, SOC also requests clarification as to which theories of alleged contract violations and fraud adequately stated a claim. After explaining the contract requirements for guard qualifications, the Order describes Relator's allegations as follows:  "Sovitsky alleges that SOC billed and received payment for guards in Baghdad who it knew did not meet these qualifications. . . . Specifically, Sovitsky maintains that SOC falsified records to bill for guards who did not pass physical readiness and firearms qualifications tests."  Order at 2–3.

In addition to those theories, however, the Complaint also loosely alleges other potential theories of fraud, including that SOC knowingly billed for guards with (1) inadequate English proficiency (WPS I and II), (2) inadequate prior guarding experience (WPS I), (3) inadequate initial firearms experience (WPS I), (4) inadequate initial training (WPS I), (5) falsified personnel bios (WPS I and II), and (6) that SOC fraudulently avoided contractual deductions (WPS I and II). *See* Compl. at 1, Table of Contents.  Those allegations are not equally plausible, as SOC explained in its Motion to Dismiss.  Nor can they interchangeably serve as the predicates for an alleged FCA claim.  *See, e.g.*, Order at 15 (noting that to be material, each alleged breach must be "so central to the contract that the government would not have paid the claims had it known of SOC's violations").

Consistent with the Complaint's allegations, SOC's Motion to Dismiss, and the Court's Order, SOC seeks clarification that Counts One and Two survive only as to physical fitness and firearms qualification allegations arising under WPS II.  The Order does not conclude that any other theories are adequately pled—and they are not—and therefore suggests that they should not

10

proceed to discovery.  And Theory Six, alleging "reverse false claims" through an alleged avoidance of contractual penalties, has already been dismissed.  *See* Order at 17 n.6 ("The Court will dismiss Count III of Sovitsky's Complaint.  In Count III, he alleges that SOC concealed and improperly avoided its obligation to pay penalties to [DoS]."); Compl. ¶¶ 329–35 (Count Three: "Defendant's conduct was . . . done with the intent to avoid having deductions as required under the Contract.").  SOC requests clarification to confirm its understanding in the event that discovery on Counts One and Two begins.

### 1. Relator's allegations under WPS II, other than those related to firearms and physical fitness, do not state a plausible claim.

As SOC explained in its Motion to Dismiss, the overwhelming majority of the Complaint's allegations are too speculative or vague to plausibly state an FCA claim, under either Rule 8 or Rule 9(b).  MTD at 17–20; *see also U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022) ("So much detail is missing from this allegation that it sounds like a neighbor's conversation only half overheard through the walls.  The patient is unknown, the first names of the other two participants are unknown, who submitted the claim is unknown, . . . what VA hospital in what state is unknown (how many Dr. Phillips are there in the country?), and so on.  The unknowns swamp the knowns.").

Whereas the Complaint alleges that Relator personally witnessed misreporting in physical fitness and weapons training (two of five potentially remaining theories), Relator only assumes that other kinds of contract violations must have occurred.  *See* MTD at 18 (quoting Complaint's allegations that "Relator <u>believes</u> that Defendant <u>must have falsified</u> the bios for many of these persons"; "Guards . . . were so deficient that Relator and others concluded that <u>it was impossible for them to have passed</u> the physical readiness test in training, as required."; "Defendant <u>had to have</u> submitted fraudulent certifications regarding the Third Country National guards' English

11

proficiency level since many of the guards knew very little, if any, English."); *id.* at 19 (quoting Complaint's assumption that an unnamed guard could not have passed an initial physical fitness test because, six months later, he "could, at most, do five push-ups"); *id.* at 20 (quoting Complaint's assumption that "many guards" could not have had the requisite prior guarding experience because Relator believed they "had no, or very little experience and could not be trained").

Outside of the specific trainings in Relator's purview, he was neither physically present nor professionally qualified (*e.g.*, in linguistics) to make the proffered assumptions. *See id.*; *cf. Triple Canopy I*, 775 F.3d at 640 (affirming dismissal of relator's allegations related to contracts outside his purview because they lacked the requisite detail to satisfy Rule 9(b)); *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780 (7th Cir. 2016) (affirming dismissal of FCA allegations that "depend[ed] entirely on [Relator]'s personal estimation"). And more importantly, conclusory, nonspecific, and/or anonymous and undated allegations do not satisfy Rule 9(b). *See* MTD at 20; *Nathan*, 707 F.3d at 455–56 ("[A] plaintiff asserting a claim under the [FCA] must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."); *Nicholson*, 42 F.4th at 196 ("In these Rule 9(b) cases, the particularity standard is steep. For future relators, it may be wise to err on the side of saying too much to avoid a kick from Rule 12(b)(6). The Original Complaint here needed more to scale that wall. The district court was right to dismiss the Original Complaint for a lack of particularity."). The Complaint's theories outside of physical fitness and weapons qualification training <u>in Relator's purview</u> therefore fail to state a claim.

### 2.     Relator's WPS I allegations do not state a plausible claim.

For the same reasons, no WPS I allegation states any plausible claim. Relator was employed by SOC from 2013 through 2019, during which he performed work under both the WPS I and WPS II agreements. Compl. ¶¶ 12, 23, 34. While the Complaint alleges contract violations under both agreements, <u>none</u> of the Complaint's WPS I allegations state a particularized or plausible claim. None relates to Relator's contemporaneous, firsthand observations; rather, they are backwards-looking assumptions that guards <u>must</u> have lacked qualifications based on Relator's after-the-fact, subjective observations. Moreover, these allegations are largely undated and not attributed to any particular guards or SOC personnel:

| WPS I Allegations | | |
|---|---|---|
| English Proficiency | Compl. ¶ 58 | Backwards-looking assumption that guards did not possess English proficiency based on Relator's subjective assessment and interactions. |
| Guarding Experience | Compl. ¶ 70 | Backwards-looking assumption that guards could not have had prior guarding experience based on observations that "many guards" were unskilled. |
| Firearms Experience | Compl. ¶ 77 | Backwards-looking assumption that guards could not have had prior firearms experience based on Relator's opinion that "guards" were unskilled. |
| Training | Compl. ¶¶ 81, 99 | Backwards-looking assumption that third-party subcontractor initially failed to train guards based on their performance six months later. |
| Personnel Bios | Compl. ¶¶ 108–10 | Allegation that one instructor lacked requisite qualifications, was reported, and resigned, and assumption there must have been others.[7] |

In short, none of the Complaint's allegations about WPS I satisfies the Fourth Circuit's standards for pleading fraud, as confirmed by the fact that the Order cites to WPS II allegations

---

[7]     Relator also asserts that SOC fraudulently avoided deductions under WPS I "upon information and belief." Compl. ¶¶ 116–17. As discussed above, that theory of fraud has been dismissed with Count Three.

alone. *See Triple Canopy I*, 775 F.3d at 640; *Presser*, 836 F.3d at 780; *Nathan*, 707 F.3d at 455–

56; *Nicholson*, 42 F.4th at 196; *see also generally* Order at 3–4, 12–14, 16.

### 3. Counts One and Two should be limited to physical fitness and weapons qualification theories under WPS II.

Consistent with applicable pleading standards, and the stark divide in plausibility between

Relator's firsthand physical fitness/firearms requalification allegations and remaining theories, the

Order only discusses and finds that the physical fitness/firearm requalification allegations under

WPS II provide a level of detail sufficient to satisfy Rule 9(b). *See* Order at 3 ("Sovitsky maintains

that SOC falsified records to bill for guards who did not pass <u>physical readiness and firearms

qualification</u> tests."); *id.* at 3–4 (discussing "<u>Physical Fitness Testing Fraud</u>" and "<u>Firearms

Qualification Fraud</u>" allegations only); *id.* at 11–13 (finding falsity adequately alleged because

Complaint alleges "SOC knew it was not complying with its core responsibilities under the WPS

I and II contracts, such as ensuring that guards pass <u>physical readiness and firearms qualifications

and re-qualifications</u> tests"); *id.* at 14 (finding scienter adequately alleged based on alleged

instructions to falsify weapons re-qualifications); *id.* at 14–15 (finding materiality adequately

alleged because "it strains credulity to argue that the Government's payment decision would not

have been affected had the Government known that the guards responsible for protecting U.S.

officials in Iraq had not fulfilled their <u>weapons and physical fitness qualifications</u>"); *id.* at 16

(discussing "guards that cannot shoot straight").

The Order also rightly observes that those contract requirements were only introduced

under WPS II. *See id.* at 2 ("The hiring limitations under WPS II were like those of WPS I, with

the additional requirements that the guards: (1) pass a physical readiness test; and (2) pass firearms

qualifications and requalification tests, as set forth in the WPS II contract." (citing Compl. ¶¶ 121–

22)). As such, the Order cites only WPS II allegations as evidence of plausible contract violations

and fraud. *See id.* at 3–4 (background), 12–13 (falsity), 14 (scienter), and 16 (materiality)—all exclusively citing to the Complaint's "WPS II Contract" allegations, beginning at Paragraph 118.

In ultimately concluding that "Counts I and II will proceed," the Court's Order thus suggests, but does not expressly provide, that only the Complaint's WPS II physical fitness and firearms qualification allegations survive. SOC requests clarification on this point. For the reasons above and in SOC's briefing, the Complaint's other allegations cannot support a plausible, much less particularized, FCA claim. Permitting those theories to proceed would thus not only contradict Fourth Circuit pleading standards and the Court's specific findings, but also vastly and improperly multiply the litigation.

Appropriately cabined, discovery in this case should be limited to the events at Relator's own training facility and determining whether Relator and his colleagues were in fact instructed to pass guards who failed physical fitness and weapons qualification tests (in addition to whether Relator was then retaliatorily discharged). By contrast, allowing the Complaint to proceed wholesale would enable a classic fishing expedition into events that Relator <u>guesses</u> may have taken place at unspecified times and locations, by unspecified persons, in connection with unspecified guards—all based on Relator's subjective, after-the-fact observations. The Court's Order rightly suggests that such speculative theories do not survive, and Fourth Circuit law confirms that discovery into those theories is, in fact, prohibited. *See Triple Canopy I*, 775 F.3d at 640 ("Badr contends that discovery may reveal the contents of the contracts and invoices, but fraud actions that rest primarily on facts learned through the costly process of discovery are precisely what Rule 9(b) seeks to prevent."); *Harrison*, 176 F.3d at 789 ("The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed. Harrison appears to be on a fishing expedition with this claim.").

To prevent otherwise inevitable discovery disputes, and to appropriately limit this case to the only allegations that approach particularity—if the Court allows Counts One and Two to survive—SOC seeks clarification that the Court's Order found falsity, materiality, and scienter adequately pleaded as to the Complaint's WPS II physical fitness and weapons qualifications claims alone.

## **CONCLUSION**

For the foregoing reasons, SOC seeks reconsideration and, if necessary, clarification of the Court's April 8, 2025, Order.

Dated: April 22, 2025

Respectfully Submitted,

*/s/ Gary S. Ward*
Gary S. Ward

Gary S. Ward (Bar # 19971)
Mark B. Sweet (*pro hac vice*)
Enbar Toledano (*pro hac vice*)
WILEY REIN LLP
2050 M Street N.W.
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
gsward@wiley.law
msweet@wiley.law
etoledano@wiley.law

*Counsel for Defendant SOC LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2025, a copy of the foregoing was filed electronically.
Notice of this filing will be sent to all counsel of record by operation of the Court's electronic
filing system.

*/s/ Gary S. Ward*
Gary S. Ward