UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**GEORGE L. RUSSELL, III**<br>Chief United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

February 19, 2026

MEMORANDUM TO COUNSEL RE:        Sovitsky v. SOC LLC
                                 Civil Action No. GLR-19-2281

Dear Counsel:

Pending before the Court is Defendant SOC LLC's ("SOC") Motion for Reconsideration and Clarification. (ECF No. 55). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant SOC's Motion but will reaffirm its prior Order.

**Background**[1]

The Court previously summarized the relevant facts in its April 8, 2025 Memorandum Opinion:

> This False Claims Act ("FCA") action arises from SOC's alleged fraudulent billing with respect to its duty to provide security services to the United States Embassy in Baghdad, Iraq. (Compl. at 2, ECF No. 1).[2] SOC is a government contractor that was awarded at least two contracts with the Department of State's Worldwide Protective Services Program ("WPS"). (Id. ¶¶ 23, 34). Under these contracts, SOC was required to supply security guards with specified skills to international locations, including the U.S. Embassy in Baghdad, Iraq. (Id. ¶¶ 28, 37, 43, 44, 49).
>
> Plaintiff-Relator Sovitsky is a subject matter expert in firearms, anti-terrorism, and protective services training. (Id. ¶ 10). He is a former employee of SOC, where he served as the Training Manager at the U.S. Embassy in Baghdad from December 2013 to June 2019. (Id. ¶¶ 12, 37). In his position, Sovitsky managed and supervised training of the guard force, personal protection services, and support personnel. (Id. ¶ 14). He also oversaw in-

---

[1] Because the Court set out the facts of this case in its April 8, 2025 Memorandum Opinion (ECF No. 50), it repeats only the facts necessary to resolve the pending Motion.
[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

service training, physical readiness, and firearms requalification of the guard force. (Id. ¶¶ 14, 28–30).

Sovitsky alleges that SOC committed unlawful fraud as to two of its WPS contracts with the Department of State, referred to hereafter as WPS I and WPS II. (Id. at 2, 9, 22). Under these contracts, any guard who did not possess the necessary qualifications as set forth in WPS I and II was not permitted to remain on the embassy grounds and was not to be charged to the Government. (Id. ¶¶ 113–15, 215–17). The qualifications for guards under WPS I include: (1) level 2 English language proficiency; (2) prior military, law enforcement, or guard force experience; (3) familiarity with Contract-issued weapons; and (4) sufficient training, as set forth in the WPS I contract. (Id. ¶¶ 49–50). The hiring limitations under WPS II were like those of WPS I, with the additional requirements that the guards: (1) pass a physical readiness test; and (2) pass firearms qualifications and requalification tests, as set forth in the WPS II contract. (Id. ¶¶ 121–22). Sovitsky alleges that SOC billed and received payment for guards in Baghdad who it knew did not meet these qualifications. (Id. ¶¶ 134–36, 164, 238). Specifically, Sovitsky maintains that SOC falsified records to bill for guards who did not pass physical readiness and firearms qualifications tests. (Id. ¶¶ 123–45; 159–70).

### 1. Physical Fitness Testing Fraud

The WPS II agreement dictated that guards be deemed "unqualified to perform services" until they pass a complete physical fitness test. (Id. ¶ 127). For those who failed this test, a retest was to be offered "within seven (7) calendar days of failing." (Id.). If a guard then failed the retest, he was to "be removed from the task order performance location." (Id.). Sovitsky's job duties included administering the guards' six-month physical fitness evaluation. (Id. ¶ 137). He alleges that despite the contractual requirements, SOC submitted invoices for guards who failed the fitness requirements. (Id. ¶¶ 134, 303, 346). He also asserts that several individuals gave him direct orders to falsify physical fitness records. (Id. ¶ 136). For instance, in January 2018, Sovitsky alleges that SOC's Project Manager instructed Sovitsky to fabricate the guards' scores by redesignating any failing scores as "diagnostic" or "practice" so that the guards could stay "on base and on contract." (Id. ¶¶ 131–45, 238, 242). Sovitsky objected to this practice and explained to the Project Manager that this was unlawful and contrary to the WPS Contract. (Id. ¶ 239). In response, the Project Manager warned Sovitsky "to strictly follow his order." (Id.).

### 2. Firearms Qualification Fraud

Sovitsky next alleges that SOC leadership gave the guards unlimited attempts at passing the weapons qualifications test (even though the WPS II contract only afforded each guard three opportunities)[3] and ordered Sovitsky to falsify

---

[3] Sovitsky notes that there was one exception for M-249 weapons where guards were allowed six opportunities to achieve a passing score. (Compl. ¶ 229).

> shooting records. (Id. ¶¶ 162, 165, 230, 242). Specifically, in March 2018, during a conference call with SOC's Operations Manager and Project Manager, the Project Manager ordered Sovitsky to only record passing weapons scores and to "regard the failed attempts as mere 'familiarization fire' or 'practice attempts.'" (Id. ¶ 242). Sovitsky asserts that during this phone call, and later via email, he told both the Operations Manager and Project Manager that these actions amounted to unlawful contract fraud. (Id. ¶¶ 236–37, 244, 246). As a result of Sovitsky's non-compliance with what he perceived to be unlawful orders, he alleges that the Training Director, Projector Manager, and Operations Manager threatened to fire him if he did not "do whatever it takes to pass the guards." (Id. ¶¶ 235, 241, 254, 268, 271).

(Apr. 8, 2025 Mem. Op. at 1–4, ECF No. 50).

On August 7, 2019, Plaintiff-Relator Paul Sovitsky filed this qui tam action against SOC on behalf of the United States. (ECF No. 1).[4] The Complaint alleges four violations of the False Claims Act ("FCA") for: false claims under 31 U.S.C. § 3729(a)(1)(A) (Count I); false statements under 31 U.S.C. § 3729(a)(1)(B) (Count II); knowingly and improperly avoiding an obligation to pay money to the Government under 31 U.S.C. § 3729(a)(1)(G) (Count III); and retaliation under 31 U.S.C. § 3730(h) (Count IV). (Compl. at 52–56, ECF No. 1). SOC filed a Motion to Dismiss on April 19, 2024 (ECF No. 46), which the Court granted as to Count III and denied as to Counts I, II, and IV (Apr. 8, 2025 Order at 1, ECF No. 51). On April 22, 2025, SOC filed the instant Motion for Reconsideration and Clarification. (ECF No. 55). Sovitsky opposed the Motion for Reconsideration and Clarification on May 5, 2025. (ECF No. 56). On May 19, 2025, SOC filed its Reply. (ECF No. 57). Six months later, Sovitsky filed a Notice of Supplemental Authority, informing the Court of a recent decision by Judge Gallagher that addresses several of the FCA claims at issue in this case. (Notice Supp. Auth. at 1, ECF No. 58).

**Motion for Reconsideration**

SOC seeks reconsideration of this Court's April 8, 2025 Order, under Federal Rule of Civil Procedure 54(b). (Mot. Recons. & Clarification at 8, ECF No. 55-1). Specifically, SOC challenges this Court's denial of its Motion to Dismiss Counts I and II. (Id. at 10–14). Rule 54(b) provides that orders "that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b).

When resolving motions for reconsideration under Rule 54(b), this Court looks to the standards for granting relief under Rules 59(e) and 60(b) for guidance. Thompson-McKoy v. UDR, Inc., No. JRR-25-611, 2025 WL 1884775, at *1 (D.Md. July 8, 2025) (citing Carrero v. Farrelly, 310 F.Supp.3d 581, 584 (D.Md. 2018)). As such, a Rule 54(b) motion for reconsideration might be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."

---

[4] The United States filed a Notice declining to intervene in this matter on June 6, 2023. (ECF No. 18).

3

Jahn v. Tiffin Holdings Inc., No. SAG-18-1782, 2020 WL 4559927, at *2 (D.Md. May 13, 2020) (quoting Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993)). Or, the motion might be granted "if one of the following is present: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" Id. (quoting Carrero, 310 F.Supp.3d at 584). Here, SOC argues that this Court misapprehended its position, and thereby committed a clear error of law, by finding an essential element of Sovitsky's FCA claim uncontested. (Mot. Recons. & Clarification at 1, 10). The Court agrees and will grant SOC's Motion for Reconsideration. Yet, as discussed more fully below, the arguments put forth by SOC do not disturb the Court's prior conclusion on the survival of Counts I and II.

Prior to delving into the merits of SOC's argument, the Court finds it helpful to briefly revisit its conclusion as to Sovitsky's FCA claims (Counts I and II): The Court denied SOC's Motion to Dismiss Counts I and II, finding that Sovitsky adequately alleged the first three elements of his FCA claims and that neither party contested the fourth element—causation. (Apr. 8, 2025 Mem. Op. at 10, 18).

To state a claim under the FCA, a plaintiff must allege that there was: "(1) 'a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or forfeit moneys due.'" United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 193 (4th Cir. 2022) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 788 (4th Cir. 1999)).[5]

Here, SOC maintains that its chief argument for dismissal was that Sovitsky failed to plead that any alleged contract violation resulted in the presentment of a claim for payment, and that its argument on presentment was also an argument as to causation. (Mot. Recons. & Clarification at 1). Having highlighted the Court's error in failing to address this argument, the Court will now evaluate whether Sovitsky adequately alleged causation.

Within the context of an FCA claim, the terms "presentment" and "causation" are often used interchangeably. See United States ex rel. Kyer v. Thomas Health Sys., Inc., 756 F.Supp.3d 75, 86 (S.D.W.Va. 2024) ("Classic causation and the presentment requirement go hand-in-hand."). As SOC points out, the central question in an FCA case is whether the defendant "caused a false claim to be presented to the government." Id. (quoting United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 456 (4th Cir. 2013)); (see Mot. Recons. & Clarification at 10). A plaintiff may plead this essential element in one of two ways by alleging: (1) "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," or (2) "that the defendant's fraudulent conduct necessarily led to the plausible inference that false claims were submitted to the government." United States ex rel. Wheeler v. Acadia Healthcare Co., Inc., 127 F.4th 472, 491 (4th Cir. 2025) (quoting Nathan, 707 F.3d at 445–46).

---

[5] Claims arising under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B) are analyzed under the same four-part standard. United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 193 (4th Cir. 2022).

Here, Sovitsky appears to allege the second approach. (Compl. ¶¶ 303–15). Contrary to SOC's assertions, the second approach does not require a plaintiff to identify actual claims for payment submitted by defendant nor "to 'produce documentation or invoices at the outset of the suit.'" Josephs v. Amentum Servs. Inc., No. SAG-25-1477, 2025 WL 3223772, at *9 (D.Md. Nov. 19, 2025) (quoting United States ex rel. Grant v. United Airlines, Inc., 912 F.3d 190, 199 (4th Cir. 2018)). A plaintiff need only allege "details of [defendant's] scheme to submit false claims" and point out facts "that lead to a strong inference that claims were actually submitted." Wheeler, 127 F.4th at 493 (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)). So long as the plaintiff "connect[s] the dots . . . between the alleged false claims and government payment,'" the complaint will survive. Josephs, 2025 WL 3223772, at *9 (quoting Grant, 912 F.3d at 199).

The Court finds that Sovitsky adequately connects the dots. First, he alleges the details of a scheme to falsify physical readiness and firearms qualifications and re-qualifications tests. (Compl. ¶¶ 122, 131, 134–36, 162, 165, 185, 306). Second, Sovitsky further alleges, on information and belief, that SOC routinely submitted invoices to the government based on these falsified scores, and in so doing, SOC was able to bill for guards that the contract otherwise prohibited. (Id. ¶¶ 40, 127; Pl.'s Opp'n Mot. Dismiss at 4, ECF No. 47). Because the Complaint alleges that SOC violated core contractual obligations by falsifying marksmanship and physical fitness tests, there can be little doubt that it billed the government for unqualified guards. On these grounds, the Court finds that Sovitsky adequately pled presentment or causation under the FCA. Accordingly, the Court will reaffirm its April 8, 2025 Order.

**Motion for Clarification**

Next, SOC asks this Court to clarify the scope of its April 8, 2025 Order as to Counts I and II. (Mot. Recons. & Clarification at 18). The Court will clarify that these Counts shall survive as to Sovitsky's allegations regarding physical fitness and firearms qualifications and requalification fraud under the WPS II contract.

For the foregoing reasons, the Court hereby GRANTS SOC's Motion for Reconsideration and Clarification (ECF No. 55) and upon reconsideration, the Court REAFFIRMS its April 8, 2025 Order. Despite the informal nature of this memorandum, it shall constitute an Order of this Court. The Clerk is directed to docket it accordingly and PROVIDE a copy to all counsel of record.

Very truly yours,

_____/s/_____
George L. Russell, III
Chief United States District Judge